# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| AMMAR AL-HABASH, | § | |
| | § | |
| | § | Civil Action No. 4:15-CV-450 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| RAYTHEON COMPANY. | § | |
| | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On September 6, 2016, the report of the Magistrate Judge (Dkt. #38) was entered containing proposed findings of fact and recommendations that Defendant Raytheon Company's ("Defendant" or "Raytheon") Motion for Summary Judgment (Dkt. #21) be granted in part and denied in part. The Magistrate Judge recommended Plaintiff's claim for religious discrimination be dismissed; and further that Plaintiff's race, national origin, and retaliation claims should survive summary judgment. Having received the report and recommendations of the Magistrate Judge (Dkt. #38), having considered Defendant's timely filed objections (Dkt. #43), Plaintiff's response (Dkt. #47), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct.

# BACKGROUND

## I.    *Relevant Facts*

The facts in this case originate from Plaintiff Ammar Al-habash ("Plaintiff")'s employment with Defendant Raytheon Company ("Defendant" or "Raytheon") (*see* Dkt. #1). The underlying facts are set out in further detail by the Magistrate Judge, and need not be repeated in their entirety (*see* Dkt. #38). Accordingly, the Court sets forth herein only those facts pertinent to Defendant's objections.

Defendant hired Plaintiff in June 2009 as a principal systems engineer at the salary grade E05 (Dkt. #21 at 8-9). Plaintiff was employed at Raytheon for nearly five years, and during such time remained at this same salary grade (Dkt. #21 at 8-9). Raytheon is a worldwide technology and innovation leader in defense and government electronics, homeland security, space, information technology, and technical services (Dkt. #21 at 7). Typically, the customers served by Raytheon are various branches of the United States government (Dkt. #21 at 9). Raytheon generally assigns tasks to its employees inside larger projects for these customers; such tasks are rated by salary grade (Dkt. #24 at 17-18). Salary grades are determined by several factors, including experience and education (Dkt. #21-B at 19). Principal systems engineers, such as Plaintiff, are supervised by section managers, who assist such engineers in finding assignments on projects for Raytheon's customers (Dkt. #21 at 9). Plaintiff contends that while he was supervised by Martin and Roush he was assigned work rated below his salary grade, which precluded him from demonstrating that he possessed higher-grade skills necessary to advance to a higher salary grade (Dkt. #21 at 17).

Plaintiff made a formal internal complaint with Raytheon's Human Resources ("HR") Department in September 2013. In November 2013, Raytheon made efforts to investigate

Plaintiff's September 2013 formal internal complaint. Shortly thereafter Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2013 (Dkt. #24 at 26-27). Subsequent to Plaintiff's filing, in February 2014, Defendant gave Plaintiff a negative annual review (which evaluated Plaintiff's performance for the 2013 calendar year (Dkt. #21-G, Exhibit 11 at 2)) (Dkt. #21 at 13), requesting that Plaintiff complete a Performance Improvement Plan ("PIP") for sixty (60) days (Dkt. #21 at 15). After Defendant asked Plaintiff to complete the PIP (Dkt. #21-A at 29-30), Plaintiff filed a second charge of discrimination with the EEOC on February 24, 2014—the charge alleged continuing acts of retaliation with the latest act occurring on February 21, 2014 (Dkt. #30-1 at 13). Plaintiff was ultimately terminated by Raytheon on March 14, 2014 after refusing to complete the PIP (Dkt. #30-1 at 15-16; Dkt. #21-G at 3).

## II.     Procedural History

On July 2, 2015, Plaintiff filed his Original Complaint in this Court alleging that (i) Raytheon discriminated against him on the basis of his race (Arab), religion (Muslim), and national origin (Syrian) in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act ("discrimination claims"), and (ii) that Raytheon retaliated against him for complaining of such discrimination, also in violation of Title VII ("retaliation claim") (collectively "Plaintiff's Claims") (Dkt. #1 at 7). On June 24, 2016, Defendant filed a Motion for Summary Judgment (Dkt. #21). On July 11, 2016, Plaintiff filed his Response and Brief in Opposition to Defendant Raytheon Company's Motion for Summary Judgment and Brief in Support ("Response") (Dkt. #24). Defendant filed its Reply in Support of its Motion for Summary Judgment (Dkt. #29) on July 21, 2016 and Amended Reply in Support of its Motion for Summary

Judgment (Dkt. #30) on August 1, 2016. Also, on August 1, 2016, Plaintiff filed a Sur-Reply in Opposition to Defendant's Reply to Defendant's Motion for Summary Judgment (Dkt. #31).

## DEFENDANT'S OBJECTIONS

Under the law, a party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b)(2)-(3). Defendant has asserted five objections to the Magistrate Judge's report and recommendation, recommending that Defendant's Motion for Summary Judgment be denied as to each of Plaintiff's race, national origin, and retaliation claims. Specifically, Defendant objects that the Magistrate Judge erred by concluding that (1) "Plaintiff could base his discrimination claims on his alleged non-selection for various work tasks"; (2) "Plaintiff raised a genuine issue of material fact that Raytheon's legitimate, non-discriminatory reasons for not selecting him for favored assignments were a pretext for discrimination"; (3) (i) "a genuine issue of material fact exists as to whether the PIP was a materially adverse action sufficient to sustain a retaliation claim"; (ii) "Plaintiff established a causal link between his protected activity and his 2013 performance rating"; and, (iii) "failing to make any findings regarding whether Plaintiff has raised a genuine issue of material fact regarding Raytheon's articulated legitimate non-retaliatory reason for his termination" (Dkt. #43 at 1-8).

Defendant does not object to the Magistrate Judge's finding that Plaintiff's claim for religious discrimination should be dismissed.[1] As such, the Court holds that this finding and conclusion of the Magistrate Judge is correct and will be adopted as the finding and conclusion

---

[1] Plaintiff did not file objections to the findings of the Magistrate Judge, but did file a response in support of the Magistrate Judge's findings.

of the Court. Plaintiff's claim for religious discrimination is hereby dismissed. The Court now turns to address Defendant's objections.

### Objection #1: Adverse Employment Action: Failure to Provide Favorable Job Assignments/Tasks

Defendant first argues that Plaintiff's allegations of improper job assignment cannot constitute denial of a promotion (and/or an adverse employment action) under existing law. (Dkt. #43 at 2). Under Title VII or § 1981, to establish a discrimination claim a plaintiff must prove that he or she was subject to an "adverse employment action." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). The Fifth Circuit has held that "adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* at 503. It is well established that denial of a promotion is an actionable adverse employment action. *Id.*

The Magistrate Judge found that "Plaintiff's assignment to tasks that required less skill, education or experience and did not provide an opportunity for career advancement—notwithstanding his requests for [such] higher-rated assignments—could be viewed by a reasonable juror as the objective equivalent of the denial of a promotion qualifying as an adverse employment action actionable under applicable Fifth Circuit precedent." Defendant challenges the Magistrate Judge's reliance on *Alvarado v. Tex. Rangers*, 492 F.3d 605 (5th Cir. 2007), in reaching this conclusion, arguing that *Alvarado* "dealt not with [a plaintiff] not getting the assignments he wanted, but with an employee who was denied a transfer to a different position" (Dkt. 43 at 2). *Alvarado* involved a state trooper who applied for a Sergeant position with the Texas Rangers but was rejected. *Id.* at 609. The Fifth Circuit, in *Alvarado*, adapted its analysis in the demotion context (that a demotion can be an adverse employment action), to the promotion context, finding ultimately that "the denial of a transfer *may* be the objective

equivalent of a denial of a promotion, and thus qualify as an adverse employment action . . . if the position sought was objectively better, then the failure to award the position . . . can constitute an adverse employment action." *Id.* at 614.

> In determining whether the new position is objectively better, a number of factors may be relevant, including whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious.

*Id.* Pursuant to *Alvarado*, the Court must therefore analyze these factors, including specifically in the instant case whether the new position (i.e., job assignment on Raytheon project) provides greater responsibility or opportunity for advancement, requires greater skill, education, or experience, or is otherwise objectively more prestigious, to determine whether Plaintiff's requested job assignments are objectively better, such that they are the equivalent of denial of a promotion. *Id.*

Here, there is competent summary judgment evidence that Plaintiff was required to participate in assignments rated at a higher skill level than his own in order to qualify for a higher salary grade—a higher salary grade gives an employee a higher compensation possibility (Dkt. #21-B at 5, 19; Dkt. #21-E at 3-4). Plaintiff specifically requested several higher-rated assignments that would give him the experience necessary to advance to a higher salary grade, was denied and/or not selected by Defendant (Dkt. #24-6 at 4), and was instead assigned lower-rated tasks or assignments (Dkt. #24-6 at 4). Viewed in the light most favorable to Plaintiff, such denial—of Plaintiff's requested assignment under Raytheon's project structure—could be objectively viewed as a demotion or denial of promotion when the assignments Plaintiff requested required greater skill, education and experience were required to qualify for a higher salary grade, and Defendant instead assigned Plaintiff to tasks that provided less room for

advancement. There is evidence sufficient to raise a genuine issue of material fact on whether Plaintiff's nonselection to favorable job assignments under Raytheon's project structure was an adverse employment action; Defendant's first objection is overruled.

***Objection #2: Pretext or Motivating Factor for Discrimination***

Defendant next objects that the Magistrate Judge's conclusion that a reasonable juror could conclude Defendant's legitimate, non-discriminatory reasons for not assigning Plaintiff to higher-rated tasks amounted to pretext for discrimination or that a motivating factor in its decision was Plaintiff's protected characteristic (Dkt. #43 at 2). Specifically, Defendant asserts in its objection that Plaintiff had a "negative reputation" amongst managers for his lackluster performance, negative attitude, and narrow knowledge base (Dkt. #43 at 2; Dkt. #21 at 18). Plaintiff, in response, argues that some of the employees Defendant proffered to support Defendant's stated reason "actually provided more positive comments and the negative comments could be viewed as constructive criticism" (Dkt. #47 at 3); and, in any event, the Court's role "is not to weigh credibility and rule on the weight of the evidence" (Dkt. #47 at 3). In light of Defendant's objection, the Court has undertaken a thorough review of the evidence cited by Defendant in both the summary judgment motion and objections to the Magistrate Judge's report and recommendation. Following such review, the Court determines that a genuine issue of material fact exists with respect to whether Defendant's proffered reason was pretext for race or national origin discrimination, and/or if Plaintiff's national origin was a motivating factor for Defendant's conduct.

### I.     *Pretext*

After Plaintiff has established his prima facie case for discrimination, and Defendant has proffered a legitimate, non-discriminatory reason for its adverse employment action, Plaintiff

must show Defendant's proffered reason is pretext for discrimination. *Isaac v. Ean Holdings, LLC*, No. 6:15-CV-681, 2016 WL 4194569, at *6 (E.D. Tex. Aug. 9, 2016). On this third step, Plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Id.* at *6 (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)). Plaintiff must bring forth evidence that Raytheon's proffered explanation is false or "unworthy of credence." *See Matthews v. United Bhd. of Carpenters & Joiners of Am.*, 228 F. App'x 436, 439 (5th Cir. 2007); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *Laxton*, 333 F.3d at 578. Summary judgment is inappropriate, therefore, where the evidence taken as a whole creates a reasonable inference that race and national origin was a determinative factor in the actions of which Plaintiff complains. *Issac*, 2016 WL 4194569, at *6. Stated another way, evidence demonstrating that Raytheon's explanation is false or unworthy of credence—taken together with Plaintiff's prima facie case— is likely to support an inference of discrimination even without further evidence of Defendant's true motive. *Laxton*, 333 F.3d at 578.

Against this backdrop, the Court's inquiry is limited to whether Raytheon's perception of Plaintiff's performance, accurate or not, was the real reason for his negative performance review. *See Laxton*, 333 F.3d at 579. In its Motion for Summary Judgment, Defendant cites excerpts of "feedback" from twelve different managers given to Colleen Higdon, the Defendant's Human Resources employee responsible for investigating Plaintiff's internal formal complaint:

- Mack Moorman: Expressed doubt about Plaintiff's skills, which led to Moorman being "reluctant to give [Plaintiff] other work."

- Bobby Womack: Reported that Plaintiff was "basically offended" by one project Womack offered him, thinking the project was "beneath him," and refused another project because "my heart won't be in it," leading Womack to look elsewhere for project help going forward.

- Randy Zywicki: Reported Plaintiff had a "bad attitude about doing things that he feels are beneath him" and only wanted to do "very technical, very sophisticated scientific analysis."

- Aaron Maestas: Indicated Plaintiff told him "Why would I do something I won't be happy doing and they won't be happy with my output," ignoring Maestas's advice to perform well on smaller assignments in order to get bigger assignments later on.

- Brad Fennell: Expressed frustration at the need to provide Plaintiff with extensive "guidance to understand details he is trying to apply analytical skills to."

- Mike Dietz: Reported that on projects he attempted to place Plaintiff on, Plaintiff "got partially into it and felt that he couldn't help out" on one project and "didn't seem . . . interested" in doing another project.

- Dave Fluckiger: Related that Plaintiff needed "a lot of care and handling, as opposed to being completely independent."

- Jerry Greenblatt: Noted that Plaintiff's work product needed to improve for his level.

- David Zebe: Reported that Plaintiff seemed to "need more 'handholding' than expected for a person of his abilities."

- Philip Shimon: Expressed concern with his "level of confidence in [Plaintiff's] analysis" on a project.

- Joel Buckley: Opined that Plaintiff needed to spend "more time working with hardware and understanding the requirements of the hardware" in order to gain a "bigger picture view."

- Colin Johnston: Reported that Plaintiff displayed an "aggressive" behavior that could impact people's willingness to work with him.

(Dkt. #21 at 19-20). Defendant relies upon these excerpts to show its legitimate, nondiscriminatory reason for Plaintiff's adverse employment action: Plaintiff had difficulty in

obtaining his choice assignments because of his negative reputation and performance (Dkt. #21 at 19-20; Dkt. #43 at 2); and also in asserting the Magistrate Judge erred in finding a genuine issue of material fact exists for trial as to the issue of pretext. Defendant asserts that "simply because three managers had positive things to say about Plaintiff's performance does not contradict Raytheon's assertion that he had a negative overall reputation within the department" (Dkt. #43 at 3).

Plaintiff has however provided evidence contradictory to Defendant's assertion that Plaintiff had a negative reputation and/or performance history, pointing out that Defendant's cited excerpts do not reflect the full substance of each manager's statements contained in the record. By way of example, Defendant cites that Mr. Moorman expressed doubts about Plaintiff's skill. However, Defendant's excerpt excludes Moorman's doubt that anyone could have performed the particular job he gave Plaintiff (Dkt. #21-F at 27). Moorman also notably stated that Plaintiff was unsuccessful in getting "tasking" in part because of the organization's tightness, which was "difficult for outsiders of any national origin, gender, etc. to break into" (Dkt. #21-F at 27). Moorman further stated that Plaintiff's "[b]ehaviors were positive" and Plaintiff "was communicative and tried to do well" (Dkt. #21-F at 26). Similarly, Randy Zywicki said he did not see that Plaintiff was "hard to work with" or "wont [sic] do what asked to do" (Dkt. #21-F at 31). Zywicki never experienced Plaintiff being unprofessional (Dkt. #21-F at 31). Zywicki also said that he was more likely to use Plaintiff now that he had gotten to know him better (Dkt. #21-F at 31). Philip Shimon also said he was generally "pleased with the work that [Plaintiff] did," enjoyed working with him, and would consider doing so again (Dkt. #24-3, Exhibit 2 at 2). Continuing on, Joel Buckley said tasks given to Plaintiff were done quickly and efficiently produced results, and Plaintiff's work helped Buckley and others have a clearer

understanding of their calibration analysis algorithms (Dkt. #24-3, Exhibit 2 at 2). Colin Johnson said he was "very happy with [Plaintiff's] work" when the only task Plaintiff completed for him was done "very well and in a timely manner" (Dkt. #24-3, Exhibit 2 at 2). Further, Bobby Womack, Aaron Maestas and Dave Fluckiger admittedly never worked directly with Plaintiff (Dkt. #21-F at 28, 34, 43). Plaintiff also submitted an affidavit in response to Defendant's Motion for Summary Judgment, wherein he avers that he "accepted menial assignments and assignments well below [his] paygrade energetically as [he] desired to learn about the company and [he] understood [he] needed to demonstrate [he] was a team player" (Dkt. #24-6 at 4). Plaintiff further averred that he performed the "menial tasks . . . more than satisfactorily in the past" (Dkt. #24-6 at 2). The aforementioned statements taken as a whole could permit a reasonable juror to find Defendant's asserted explanation is false or unworthy of credence (i.e., that Defendant's proffered reason for discharge was not its real reason); and, accordingly, could be pretext for race or national origin discrimination.

Moreover, choosing to credit only those excerpts cited by Defendant and discarding the managers' positive comments cited by Plaintiff would require the Court to improperly weigh the evidence and resolve disputed issues in favor of the moving party. *Heinsohn v. Carabin & Shaw, P.C.*, No. 15-50300, 2016 WL 4011160, at *13 (5th Cir. July 26, 2016). Doing so would be tantamount to making a credibility determination, and—at this summary judgment stage—a court "may make no credibility determinations." *Id.* at *13.

Defendant further and/or alternatively asserts that the Magistrate Judge's recommendation constitutes an inappropriate second-guessing of Raytheon's business judgment, and cites *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988), to support such assertion. *Bienkowski* involved a security representative who brought claims of age

discrimination against American Airlines when they terminated him at fifty-nine (59) years old. 851 F.2d at 1504. At summary judgment, American Airlines proffered the affidavits of two supervisors responsible for terminating Bienkowski contending Bienkowski was not qualified for his job because his supervisors were dissatisfied with his work. *Id.* at 1507. American Airlines argued Bienkowski had to prove he was performing his job at a level meeting his employer's expectations to survive summary judgment. *Id.* at 1505. The Fifth Circuit disagreed, noting the parties had "sharply joined issue over the quality of Bienkowski's performance," but that the plaintiff provided his own affidavit containing a detailed refutation of American's performance critique. *Id.* at 1507. The Fifth Circuit further articulated that though "[t]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers," summary judgment was improper if the Fifth Circuit granted Bienkowski the inferences that could be drawn from his affidavit. *Id.* at 1507-08. Similar to *Bienkowski*, here the managers' statements cited by Defendant and discussed *supra* are contradictory to both Plaintiff's affidavit and the full substance of their testimony regarding whether Plaintiff had a negative reputation. Granting Plaintiff the inferences that may be drawn from such contradictions, a jury could conclude that Defendant's proffered reason lacked veracity and that its true motivation resided in race and national origin discrimination. The Court may not; and, a jury must therefore, determine whether Plaintiff's national origin and race played a role in the Defendant's decision not to advance Plaintiff.

## II. *Motivating Factor*

Even if Plaintiff failed to establish Defendant's proffered reason was untrue, Plaintiff could survive summary judgment upon showing that Defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's protected

characteristics: race and national origin. *Scott v. Weber Aircraft*, 609 F. App'x 788, 791 (5th Cir. 2015) (quoting *Rachid v. Jack in The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). The Magistrate Judge found that Plaintiff's national origin could be a motivating factor in Defendant's conduct (Dkt. #38 at 15).[2]

Defendant's Human Resources employee responsible for investigating Plaintiff's internal formal complaint, Colleen Higdon ("Higdon"), gathered several statements that indicate Plaintiff's nationality may have been taken into account in the decision to submit Plaintiff for requisite security clearances (*see* Dkt. #24-2, Exhibit 11 at 17, 28). Indeed, Higdon recorded her impressions of statements by Mike Dietz—a Raytheon employee that oversaw about thirty (30) projects at the time Higdon interviewed him—that nationality influences security clearance level (*see* Dkt. #24-2, Exhibit 11 at 17). Gaynelle Swann—a Raytheon employee transitioning out of a systems engineering section managerial position when interviewed by Higdon—similarly made statements indicating that there were preconceived notions at Raytheon regarding Plaintiff's ability to be cleared for special access in part because of his nationality (*see* Dkt. #24-2, Exhibit 11 at 28).

Defendant argues that this evidence is of no moment; and, it is well known that foreign contacts can impact and make it difficult to obtain security clearances from the federal government and that the Magistrate Judge ignored that (1) Raytheon has no role in approving security clearances; and, (2) there is no evidence in the record that another employee with foreign contacts was allowed to complete additional paperwork whereas Plaintiff was not (Dkt. #43 at 6). Neither party here contends that Raytheon approves the security clearances, or that the United States government denied Plaintiff a security clearance. Rather, Plaintiff argues

---

[2] The Magistrate Judge did not find that Plaintiff's race could be a motivating factor in Defendant's conduct (Dkt. #38 at 15).

there is evidence in the record that Defendant had "impressions" regarding whether Plaintiff would be approved for clearance which may have affected his job assignment. Specifically, Plaintiff alleges that Defendant's role in the security clearance process is to present people to the United States government (Dkt. #21-A at 18), and that Defendant's failure to present Plaintiff and/or permit him to complete an application affected his ability to receive project specific clearance (Dkt. #24-6 at 2). Plaintiff testified in his deposition that he wanted Raytheon to "at least put the [security clearance] paperwork [in] and let the Government reject [him] or give [him] a reason so [he could] actually go back and take action" (Dkt. #21-A at 17).[3] There is sufficient evidence in the record that national origin might have been a factor in connection with seeking approval of Plaintiff's security clearances, and that Defendant may have had pre-conceived notions about Plaintiff's ability to receive security clearances due, in part, to his national origin; and, all of which led Defendant to not submit Plaintiff for project specific security clearances (Dkt. #24 at 22, 24). Summary judgment is inappropriate when there is evidence that could allow a reasonable juror to conclude that a protected characteristic was a motivating factor in Defendant's employment decision. *Brisco v. Home State Ins. Grp., Inc.*, No. CIV.A.3:04 CV 0610 P, 2005 WL 1164183, at *12 (N.D. Tex. May 16, 2005).

As such, Plaintiff has met his burden to show pretext for race and national origin discrimination; and, alternatively, that his national origin was a motivating factor for its conduct.

---

[3] Plaintiff further avers that he has worked for other companies that required security clearance from the United States government, and that he had never previously been prevented from receiving top-secret security clearance from the U.S. government (responsible for providing project-specific clearance) (Dkt. #24-6 at 2). On one occasion at Raytheon, Plaintiff alleges he was told to complete an application for Special Access Program, but the "Security Specialist Raytheon employee," observing Plaintiff completing the application, subsequently stopped Plaintiff from completing the application (Dkt. #24-6 at 2). Plaintiff further alleges that his department manager denied him the opportunity to apply for sensitive clearances or project specific clearances or submit a compelling need request (Dkt. #24-6 at 2). Plaintiff identified at least one other employee—Dennis Womack—who also had foreign contacts and was permitted to submit additional paperwork for clearances (Dkt. #21-A at 17).

Accordingly, Defendant's second objection is overruled. Plaintiff's race and national origin claims should proceed to trial.

**Objection #3: Retaliation Claim**

Defendant's remaining objections each ultimately assert the Magistrate Judge committed error in recommending denial of summary judgment as to Plaintiff's retaliation claim. Plaintiff's claim for retaliation is based on three separate actions by Defendant: (1) giving Plaintiff a negative review for 2013; (2) assigning a PIP to Plaintiff; and (3) terminating Plaintiff. Defendant's objections, specifically, allege the following: (1) the Magistrate Judge erred in finding Plaintiff set forth a prima facie case because (i) Plaintiff's PIP cannot be an "adverse employment action"; and (ii) a causal link does not exist between Plaintiff's protected activity and his 2013 performance rating; and (2) the Magistrate Judge committed error by failing to make an express finding regarding whether Defendant's proffered reason for Plaintiff's termination was pretext for retaliation.

"Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). Just as with race discrimination claims, claims for retaliation based on circumstantial evidence are analyzed under the *McDonnell* framework. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705-06 (5th Cir. 2016); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Since Plaintiff has presented no direct evidence of retaliation, he must rely on the *McDonnell* analysis.

### A. Step #1 in McDonnell-Douglas Framework –Prima Facie Case

Initially, Plaintiff must set forth a prima facie case of retaliation. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). To do so, Plaintiff must establish (1) he engaged in

protected activity; (2) the employer took a materially adverse action against him; and (3) a causal link exists between the protected activity and the adverse action. *Wheat*, 811 F.3d at 705. Defendant concedes that Plaintiff engaged in protected activity by filing his September 2013 internal complaint and his December 2013 EEOC Charge (Dkt. #30 at 5), and Plaintiff filed a second EEOC Charge on February 24, 2014 (Dkt. #30-1 at 13); accordingly, the first element of Plaintiff's retaliation claim is not at issue. However, as stated above, Defendant objects that Plaintiff failed to prove elements two and three of his prima facie case alleging (i) Plaintiff's PIP cannot be an "adverse employment action"; and (ii) a causal link does not exist between Plaintiff's protected activity and his 2013 performance rating.

### i. *Adverse Employment Action*

The Supreme Court has clarified that "materially adverse actions" for the purposes of retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment," but those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64-68 (2006). Defendant does not object to the Magistrate Judge's finding that Plaintiff's negative performance review and termination are adverse employment actions. As such, the Court holds that these findings and conclusions of the Magistrate Judge are correct and will be adopted as the findings and conclusions of the Court.

Defendant does object however to the Magistrate Judge's conclusion that Plaintiff's PIP could satisfy the "adverse employment action" (Dkt. #43 at 7). Specifically Defendant argues that Plaintiff's PIP was not retaliatory as colorable grounds existed for the PIP and also that Plaintiff continued to engage in protected activity (Dkt. #43 at 7). In its Motion for Summary Judgment, Defendant primarily focused its argument on whether colorable grounds existed for

Plaintiff's PIP (Dkt. #21 at 21). In its objection, Defendant now shifts focus to argue that Plaintiff continued to engage in protected activity (Dkt. #43 at 7)—the Magistrate Judge did not squarely address this issue. Accordingly herein, the Court will address both arguments.

Defendant asserts that the Magistrate Judge's recommendation constitutes error because colorable grounds existed for Plaintiff's PIP, and cites *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015), to support such assertion. *Jackson* involved an engineer who brought claims of retaliation, age and race discrimination against Honeywell when it assigned him a PIP. 851 F.2d at 280. At summary judgment, Honeywell proffered the annual reviews of Jackson contending "Jackson's performance fell below expectations." *Id.* at 283. Before Jackson's termination in 2010, Honeywell had noted Jackson's performance deficiencies in as many as three previous annual reviews. Indeed, as early as 2005, Jackson's supervisor had found that Jackson performed "below what would be expected of a Band 4 Principal Engineer." *Jackson, Jr. v. Corp. Serv. Co.*, No. CV H-11-4404, 2013 WL 11309365, at *1 (S.D. Tex. Apr. 17, 2013), *aff'd sub nom. Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280 (5th Cir. 2015). Then, in 2006, Jackson's supervisor again noted that Jackson's performance fell below expectations in the areas of 'Technical or Functional Excellence,' 'Gets Results,' and 'Champions Change.'" *Id.* Jackson's 2008 annual review similarly noted significant performance deficiencies when Jackson's supervisor rated Jackson "below expectations in the following behaviors: 'Gets Results[,]' 'Growth and Customer Focus,' 'Self–Aware/Learner,' and 'Integrative Thinker.'" *Id.* at *2. In early 2009, Honeywell ultimately gave Jackson a Letter of Expectation identifying "specific areas of improvement and examples of how Plaintiff's current performance was unsatisfactory"; *id.*, and in August 2009, Honeywell placed Jackson on a sixty (60) day Performance Improvement Plan to demonstrate immediate and continuous improvement

of his performance. Despite being given more than three months to complete his PIP, Jackson was placed on a second PIP, but ultimately failed to meet the expectations of that PIP as well. *Id.* at *4. Honeywell argued Jackson's PIPs could not constitute adverse employment actions when Honeywell had colorable grounds for issuing them. The district court noted that "Jackson's 2005, 2006 and 2008 performance reviews, which predate[d] his initial protected activity, contain[ed] criticism of his lack of technical knowledge and technical contributions and expressly state[d] that [Jackson] was not meeting the expectations of his position as a Principal Engineer *Id.* at *14; *see Jackson*, 601 F. App'x at 286. As such, the district court concluded, and the Fifth Circuit agreed, that such PIPs did not constitute retaliation. *Id.* at *14; *see Jackson*, 601 F. App'x at 286. Here, Defendant argues that it "began documenting Plaintiff's performance deficiencies no later than 2012 and continued to note his performance deficiencies throughout 2013, before Plaintiff complained of discriminatory treatment" (Dkt #43 at 7). Unlike *Jackson* however, Plaintiff's 2012 annual review makes no mention of any deficient performance by Plaintiff. The closest comment therein is that Plaintiff has "resisted assignments for some of the basic systems engineering tasks that are necessary to put into his foundation, before [Plaintiff] moves forward" (Dkt. #21-A at 59). Plaintiff's 2012 annual review is further readily distinguishable from *Jackson* because Defendant assigned Plaintiff a "meets requirements" rating for 2012 (Dkt. #21-A at 60). To the extent Defendant could argue it notified Plaintiff of performance deficiencies earlier than 2012, this argument fails whereas Plaintiff here received a "meets expectations" in his previous annual reviews (Dkt. #21-D at 42). The Court concludes that *Jackson* is factually distinguishable, and colorable grounds for Plaintiff's PIP did not exist when Plaintiff received "meets expectations" ratings in those annual reviews prior to his supervisors learning of his engagement in protected activity.

Defendant further cites *Jackson* to argue that Plaintiff's PIP cannot be an adverse employment action "where the employee continues to engage in protected activity" (Dkt. #43 at 7). Specifically here, Plaintiff continued to engage in protected activity after he received the PIP, filing a second charge of discrimination with the EEOC on February 24, 2014, which alleged continuing acts of retaliation with the latest act (being the PIP) occurring on February 21, 2014 (Dkt. #30-1 at 13). Defendant argues pursuant to *Jackson* summary judgment must be granted; however, the Fifth Circuit in *Jackson* cites *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007), in stating that, along with colorable grounds, an employer's action could not constitute an "adverse employment action" where it did not in fact dissuade a charge of discrimination. *See DeHart*, 214 F. App'x at 442. Notably in *Jackson*, while the Fifth Circuit stated that "written warnings and unfavorable performance reviews are not adverse employment actions . . . where the employee continues to engage in protected activity," the Fifth Circuit dismissed Plaintiff's retaliation claim, not on that basis, but rather colorable grounds. 601 F. App'x at 286. The Fifth Circuit took care to note that *DeHart* is an "unpublished decision[] and [is] therefore not binding, but [merely] persuasive." *Jackson*, 601 F. App'x at 286 n.2.[4] As such, the Court analyzes whether the challenged action is "materially adverse" under existing Supreme Court authority: if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015). The Supreme Court "refer[s] to reactions of a reasonable

---

[4] Unpublished opinions issued on or after January 1, 1996 are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case, but an unpublished opinion may be cited pursuant to Federal Rules of Appellate Procedure 32.1(a). Fifth Circuit Rule 47.5.4.

employee because [they] believe that the provision's standard for judging harm must be *objective*." *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 260 (5th Cir. 2014) (quoting *Burlington*, 548 U.S. at 68) (emphasis added).[5] A reasonable employee is the average person in similarly situated circumstances. *Brandon*, 808 F.3d at 271. Therefore, the Court must objectively evaluate the PIP, and in circumstances similar to those before this Court, the Fifth Circuit has previously found a PIP to be a materially adverse action on which a plaintiff may base his retaliation claim. *Ray v. Tandem Computs., Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) (holding that PIP and termination of employment were adverse employment actions); *see also Pollak v. Lew*, No. CIV.A. H-11-2550, 2013 WL 1194848, at *9 (S.D. Tex. Mar. 22, 2013), *aff'd*, 542 F. App'x 304 (5th Cir. 2013) (finding placement on a PIP could dissuade a reasonable employee from engaging in protected activity). Accordingly, the Court concludes that Plaintiff's PIP could satisfy the second element of his prima facie case for retaliation. The PIP can support retaliation as a matter of law and the Magistrate Judge's conclusion is correct.

### ii. Causal Link

Plaintiff must also show a causal connection between the materially adverse action and the protected activity to survive summary judgment. *See Davis v. Fort Bend Cty.*, 765 F.3d 480, 491 (5th Cir. 2014). Temporal proximity between an employer's knowledge of protected activity and an adverse employment action can serve, in some instances, as indirect evidence of a

---

[5] The District of Columbia Circuit has previously highlighted *DeHart*'s perceived application of a subjective, rather than objective, standard. In *Baloch v. Norton*, the district court relied on *DeHart* to dismiss the plaintiff's retaliation claim: "The filing of a complaint after an alleged instance of retaliation militates against a conclusion that retaliation occurred, as it demonstrates that the filer was not in fact dissuaded from protecting his rights. Here, the plaintiff kept filing administrative complaints throughout and even after Loman's tirades." *Baloch v. Norton*, 517 F. Supp. 2d 345, 361 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008). Though the District of Columbia Circuit ultimately affirmed the district court's dismissal of the plaintiff's retaliation claim, it disagreed with the district court's reasoning: "We disagree with the District Court's reasoning on this one point because it appears that the court focused on Baloch's subjective reactions rather than on whether the objective 'reasonable worker' would have been dissuaded from making a discrimination complaint." *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 n.5 (D.C. Cir. 2008).

causal link. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). The proximity between the employer's knowledge and the adverse employment action must be very close. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing cases holding that three (3) and four (4) months between employer's knowledge of protected activity and adverse employment action are too long to establish a causal link on its own). If an employee is relying on close temporal proximity to establish the causal connection, the employee must also produce "evidence of knowledge of the protected activity on the part of the decision maker." *Ramirez v. Gonzalez*, 225 F. App'x 203, 210 (5th Cir. 2007). Defendant does not object to the Magistrate Judge's finding that a causal link exists between Plaintiff's termination, PIP, and his protected activity. As such, the Court holds that this finding and conclusion of the Magistrate Judge is correct and will be adopted as the finding and conclusion of the Court.

Defendant objects that the Magistrate Judge erred in finding a causal link existed between Plaintiff's protected activity and his 2013 performance rating due, in part, to the "temporal proximity" between the date Plaintiff's supervisor Jerry Roush "learned" of Plaintiff's protected activity and the date Defendant assigned Plaintiff a negative annual performance review rating (an adverse employment action) (Dkt. #43 at 6). Specifically, Defendant argues the Magistrate Judge ignored a critical undisputed fact: Plaintiff's supervisors, Jerry Roush and Steve Majeske, determined to give Plaintiff a final negative review rating by November 1, 2013, before they had knowledge of either the internal complaint or the initial EEOC Charge (Dkt. #43 at 6). Thus, Defendant asserts it is impossible for any causal link to exist.

While it is clear that Roush knew of Plaintiff's protected activity no later than November 13, 2013 (Dkt #21-F at 45), and that Roush made the final decision to give Plaintiff a negative annual performance review rating on or before February 6, 2014 (Dkt. #21-C at 23), Defendant's

citations to the summary judgment record do not support Defendant's further assertion that the timing of Roush and Majeske's decision to assign Plaintiff a negative performance review rating is "undisputed." To begin with, Defendant cites to a deposition excerpt of Steve Majeske; the excerpt relates to testimony by Majeske regarding an email dated November 1, 2013 to Teri Lawson including performance ratings for his department for the 2013 calendar year (Dkt. #21-D at 14). When questioned regarding whether these performance review ratings were the final ratings, Majeske did not testify the ratings were final, responding only that, "[t]hey are the ratings submitted on that date" (Dkt. #21-D at 14). Secondly, Defendant cites an email from Roush to Majeske and Matthew Taylor (a Human Resources Manager at Raytheon) dated February 6, 2014 stating that he has completed his first draft of Plaintiff's 2013 performance review and definitively stating that Plaintiff would receive a negative score (Dkt. #21-D at 44). Taken together, these cites stand only for the proposition that Plaintiff's supervisors made the final decision to give Plaintiff a negative review rating on or before February 6, 2014 (not that such decision was definitive by November 1, 2013). Also notable, at deposition on May 26, 2016, Roush stated that he did not recall when he made the determination to give Plaintiff a negative annual performance review rating (Dkt. #21-C at 16); but, after looking at the February 6, 2014 email, Roush testified his decision to give Plaintiff a negative annual performance review rating "appears [to have] been made at that time" (Dkt. #21-C at 23). A month later, Roush executed an affidavit to support this summary judgment averring that in fact Plaintiff's negative rating was confirmed by October 25, 2013 (Dkt. #21-H at 1). A jury should resolve the credibility determination regarding Roush's potentially contradictory statements. *See Rekieta v. K-Mart Corp.*, No. 3:96-CV-1142-R, 1998 WL 7143, at *4 (N.D. Tex. Jan. 5, 1998)

(holding that non-movant's later-filed affidavit, which contradicted affiant's previous deposition testimony, created a question of the witness's credibility appropriate for resolution by jury).

This, taken together with Plaintiff's evidence that Defendant's characterization of Plaintiff dramatically changed after Plaintiff made an informal internal complaint of discrimination in April 2013 prior to his formal internal complaint and first EEOC charge on which Plaintiff bases his retaliation claim (Dkt. #24 at 26-28; Dkt. #47 at 4), raises issues of material fact.[6]   In 2012, Martin gave Plaintiff a "meets" on his annual performance review (Dkt. #21-E at 9, Exhibit 1).  Martin complimented Plaintiff for his enthusiasm and indicated Plaintiff "made great strides in the 2012 year" (Dkt. #21-E at 9, Exhibit 1).  Martin completed Plaintiff's 2012 annual review in April 2013 (Dkt. #21-E at 9, Exhibit 1).  On April 15, 2013, Defendant received Plaintiff's informal complaint referencing "concerns about unfair treatment . . . with respect to developmental opportunities, assignments, compensation, and promotion" (Dkt. #24-2, Exhibit 1).  On July 10, 2013, Kirk Kimball, a Raytheon Human Resources employee, sent an email to another HR employee saying that he discussed Plaintiff's concerns with Martin (Plaintiff's then-supervisor) and Majeske (Plaintiff's then-department manager) a few weeks before, and  Kimball suggested that they "let [Plaintiff's complaint] go for now" (Dkt. #24-2, Exhibit 4).  Martin gave Plaintiff a critical mid-year review on July 30, 2013 (Dkt. #24-1, Exhibit 4).  Roush became Plaintiff's supervisor in July 2013 (Dkt. #21-C at 8).   Roush and Martin were friends who socialized outside of work and attended family activities together (Dkt. #21-E at 13).  As discussed above, Roush purportedly decided on October 25, 2013 to rank Plaintiff as "needs

---

[6] Defendant objected to the presentation of this evidence to the extent it was an attempt by Plaintiff to assert a separate retaliation claim, arguing that Plaintiff failed to exhaust any and all administrative remedies with respect to it (Dkt. #30 at 5-6).  However, the existence of past retaliatory acts may be used as background evidence in support of this timely claim of retaliation. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 45 (5th Cir. 2011).  The Court will consider this evidence accordingly.  *Everett*, 444 F. App'x at 45.

improvement," Raytheon's lowest performance ranking, despite the fact Roush only had supervised Plaintiff for less than four (4) months; and Majeske, who knew about Plaintiff's May 2013 complaint, provided consultation for the "needs improvement" ranking.

The record evidence itself makes clear that the exact date on which Plaintiff's supervisors assigned Plaintiff a negative annual performance review rating and their knowledge at that time is not undisputed. A fact finder is needed to make credibility determinations regarding the evidence submitted. *Fitzpatrick v. Pontotoc Cty., Miss.*, 612 F. App'x 770, 776 (5th Cir. 2015) ("[A]ssessments of credibility are not appropriately drawn by the court at the summary judgment stage.").

Accordingly, Plaintiff has established a prima facie case of retaliation as to Plaintiff's 2013 performance rating and his termination. The Court now turns to consider the next stage in the *McDonnell* framework.

### B. Step #2 in McDonnell-Douglas Framework –Legitimate, Non-Retaliatory Reason

Once Plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the employer to state a legitimate, non-retaliatory reason for the employment action. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). In regards to this second step, Defendant's Motion for Summary Judgment only offers a legitimate, non-retaliatory reason as to Plaintiff's termination: Plaintiff's refusal to participate in the PIP (Dkt. #21 at 22). Plaintiff does not object to the Magistrate Judge's finding that Defendant proffered a legitimate, non-retaliatory reason for Plaintiff's termination (Dkt. #24 at 29; Dkt. #47). As such, the Court holds that this finding and conclusion of the Magistrate Judge is correct and will be adopted as the finding and conclusion of the Court. The Court now turns to consider the final stage in the *McDonnell*

framework, having found that Steps 1 and 2 are satisfied for each of the three separate adverse employment actions alleged.

### C.    *Step #3 in McDonnell-Douglas Framework – Pretext for Defendant's Retaliation*

If the employer is successful in meeting its burden at the second stage of *McDonnell*, the "inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Plaintiff must accordingly respond to Defendant's alleged non-retaliatory reason and produce evidence that would permit a reasonable jury to find that he would not have been fired "but for" his complaint of discrimination. *Harry v. Dall. Hous. Auth.*, No. 3:14-CV-0482-M, 2016 WL 67769, at *8 (N.D. Tex. Jan. 5, 2016). Defendant objects to the Magistrate Judge's finding that its legitimate, non-retaliatory reason for assigning Plaintiff's negative performance review and placing him on the PIP were pretext for retaliation are as "flawed for the same reasons previously articulated [regarding pretext for discrimination]" (Dkt. #43 at 8); however, the Court has adopted those findings *supra*. As such, the Court holds that the finding and conclusion of the Magistrate Judge that Defendant's proffered reason for giving Plaintiff a negative review is correct and will be adopted as the finding and conclusion of the Court.

Defendant also contends the Magistrate Judge committed error by failing to make an express finding regarding whether Defendant's proffered reason for Plaintiff's termination was pretext for retaliation. The Magistrate Judge did state Plaintiff had raised a genuine issue of material fact regarding whether Defendant's legitimate, non-discriminatory reason for giving Plaintiff a negative review rating and a PIP was pretextual; however, the Court now undertakes a full analysis of the termination and makes detailed findings as requested by Defendant.

Defendant argues it has proffered a legitimate reason for Plaintiff's termination: Plaintiff refused to complete the PIP despite Defendant's warning that failure to do so would result in termination. In Plaintiff's Response to the Motion for Summary Judgment, Plaintiff advances that a jury could view Defendant's proffered reason as pretext when three employees ("the Employees") in Plaintiff's department were given "needs improvement" rankings the year before Plaintiff but did not also receive PIPs (Dkt. #21-D at 9, 14, 42)—despite Defendant's assertion that it is common practice to assign PIPs to negatively reviewed employees (Dkt. #21 at 8).

The Fifth Circuit in *Foster v. Solvay Pharm., Inc.*, 160 F. App'x 385, 389 (5th Cir. 2005) found that a termination following the plaintiff's failure to follow a PIP could not be pretext for retaliation when the PIP was not enacted in retaliation for protected activity, the person who instituted the PIP did not know of the protected activity, and the PIP included a written warning that failure to follow the plan could result in termination. On March 10, 2014, Plaintiff informed Defendant that he would not proceed with the PIP; Plaintiff understood that he could be terminated if he chose not to participate in the PIP (Dlt. #21-A at 30-31). Accordingly, it is uncontroverted that Plaintiff failed to fulfill his duties under the PIP. However, there is summary judgment evidence that Roush, the person who assigned the PIP to Plaintiff, knew of Plaintiff's protected activity and that the PIP might have been enacted as retaliation for protected activity.

Roush testified in his deposition that he determined to give Plaintiff a PIP after the negative performance review rating was given to Plaintiff on February 21, 2014 (Dkt. #21-C at 18; Dkt. #21-A at 29-30). As discussed above, Roush knew of Plaintiff's formal internal complaint no later than November 13, 2013 (Dkt. #21-F at 45). Accordingly, Roush might have known of Plaintiff's protected activity before he enacted the PIP. Moreover, the PIP might have

been enacted in retaliation for protected activity when there is evidence that at least three employees in Plaintiff's department were given "needs improvement" rankings the year before Plaintiff and did not receive PIPs (Dkt. #21-D at 9, 14)—despite Defendant's assertion that it is common practice to assign PIPs to negatively reviewed employees (Dkt. #21 at 8). If the Court looked at Plaintiff's termination in isolation, as the Defendant asks, the Court would be ignoring the chain of events that gives rise to those issues of material fact discussed *supra*. *See Lee v. N.M. State Univ. Bd. Of Regents*, 102 F. Supp. 2d 1265, 1277-78 (D.N.M. 2000) (finding plaintiff made a successful showing of pretext based on a pattern of retaliatory conduct which included heightened scrutiny and criticism, divergence from internal procedures, disparate treatment, adverse evaluation, negative tenure recommendation, denial of tenure, unequal rate of pay and finally termination from employment). Accordingly, *Foster* is factually distinguishable and a genuine issue of material fact exists as to whether Plaintiff's termination would not have occurred but for Defendant's retaliation. Defendant's final objection is overruled, and Plaintiff's retaliation claim should proceed to trial.

## CONCLUSION

Having received the report of the United States Magistrate Judge, having considered each of Plaintiff's timely filed objections (Dkt. #43), Plaintiff's Response (Dkt. #47), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #38) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #21) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim for religious

discrimination under 42 U.S.C. § 2000e-2 is dismissed with prejudice.  Plaintiff's claims for retaliation and also race and national origin discrimination shall proceed to trial.

**IT IS SO ORDERED.**

**SIGNED this 24th day of October, 2016.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE